**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **MARK PANASUK, DAVID ROSS, and DAVID JOHN THOMAS, on behalf of themselves and all others similarly situated,** | |
| Plaintiffs, | Case Number 1:09-cv-0066-TLS-RBC |
| v. | |
| **STEEL DYNAMICS, INC., KEITH BUSSE, AND JOHN C. BATES,** | |
| Defendants. | |

**JOHN C. BATES'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION
TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Dated: November 9, 2009

Christian J. Mixter (*pro hac vice*)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: 202-739-3000
Fax: 202-739-3001
Email: cmixter@morganlewis.com

Jill Baisinger (*pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: 215-963-5000
Fax: 215-963-5001
Email: jbaisinger@morganlewis.com

Steven L. Jackson
Baker & Daniels LLP
111 E. Wayne St., Suite 800
Fort Wayne, IN 46802-2387
Telephone: 260-424-8000
Fax: 260-460-1700
Email: steven.jackson@bakerd.com

*Counsel for Defendant John C. Bates*

BDDB01 5911803v1

## TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. Plaintiffs Cannot Bring Claims Against Mr. Bates Based On Any Of The Three Challenged Statements ...................................................................................... 2

        1. This Complaint Contains No Allegations Permitting Attribution Of The Press Release Or Conference Call To Mr. Bates ............................... 2

        2. Seventh Circuit Law Establishes That These Individual Plaintiffs Have No Standing To Bring Claims Based On SDI's Form 10-K ............ 5

    B. Plaintiffs Have Failed To Include Allegations Establishing That Mr. Bates Had Or Should Have Had Knowledge Of Any False Statements ......................... 7

        1. Mr. Bates's Position As An Executive At Heidtman Steel Does Not Support A Conclusion Of Wrongful Knowledge .............................. 7

        2. Plaintiffs' Arguments Rely On An Impermissible Interpretation Of The "Core Operations" Theory .................................................................. 9

        3. Plaintiffs' Effort To Establish Scienter Through Stock Sales Disregards Governing Case Law And Publicly-Filed Documents Showing That Mr. Bates's Stock Sales Were Not Suspicious ................ 11

    C. This Complaint Does Not Establish Control Person Liability By Mr. Bates ...... 13

III. CONCLUSION .................................................................................................................. 14

## TABLE OF AUTHORITIES

### CASES

Barrie v. Intervoice-Brite, Inc., 409 F.3d 653 (5th Cir. 2005) .................................................... 4-5

Central Bank of Denver, NA v. First Interstate Bank of Denver, NA, 511 U.S. 164 (1994) .......... 3

Danis v. USN Comm'ns, Inc., 73 F. Supp. 2d 923 (N.D. Ill. 1999) ............................................. 11

Davis v. SPSS, Inc., 385 F. Supp. 2d 697 (N.D. Ill. 2005) ............................................................ 6

Feldman v. Motorola, Inc., No. 90-5887, 1993 WL 497228 (N.D. Ill. Oct. 14, 1993) ................. 6

Greater Pa. Carpenters Pension Fund v. Whitehall Jewellers, Inc., No. 04-1107,
    2005 WL 61480 (N.D. Ill. Jan. 10, 2005) ................................................................................ 6

In re Guidant Corp. Sec. Litig., 536 F. Supp. 2d 913 (S.D. Ind. 2008) ......................................... 8

In re Harley-Davidson, Inc. Sec. Litig., __ F. Supp. 2d ___, 2009 WL 3233754
    (E.D. Wis. Oct. 8, 2009) ............................................................................................. 4, 11, 13

Higginbotham v. Baxter Int'l, Inc., 495 F.3d 753 (7th Cir. 2007) ........................................... 8, 12

Lindelow v. Hill, No. 00-3727, 2001 WL 830956 (N.D. Ill. July 20, 2001) ......................... 10, 11

Makor Issues & Rights, Ltd. v. Tellabs, 437 F.3d 588 (7th Cir. 2006),
    rev'd on other grounds, 551 U.S. 308 (2007) ................................................................. 2, 11

Makor Issues & Rights, Ltd. v. Tellabs, 513 F.3d 702 (7th Cir. 2008) ......................................... 2

McConville v. SEC, 465 F.3d 780 (7th Cir. 2006) ........................................................................ 3

Payton v. County of Kane, 308 F.3d 673 (7th Cir. 2002) ............................................................. 7

Pugh v. Tribune Co., 521 F.3d 686 (7th Cir. 2008) ........................................................ 2, 5, 8, 11

Roots P'ship v. Land's End, Inc., 965 F.2d 1411 (7th Cir. 1992) ............................................. 5, 6

SEC v. First Jersey Sec., 101 F.3d 1450 (2d Cir. 1996) ............................................................... 3

Schleicher v. Wendt, 529 F. Supp. 2d 959 (S.D. Ind. 2007) ........................................................ 10

Sequel Cap., LLC v. Rothman, No. 03-678, 2003 WL 22757758
    (N.D. Ill. Nov. 20, 2003) ........................................................................................................ 10

## TABLE OF AUTHORITIES
(continued)

In re Ulta Salon, Cosmetics & Fragrance, Inc., Sec. Litig., 604 F. Supp. 2d 1188
    (N.D. Ill. 2009)..................................................................................................................10

**I.      INTRODUCTION**

There is a striking disconnect between the allegations in the Complaint[1] and the arguments in Plaintiffs' Opposition. Plaintiffs' responses to every argument raised in Mr. Bates's Memorandum rely on unsupported rhetoric, and largely disregard governing Seventh Circuit case law.

First, plaintiffs still offer no explanation as to how they can attribute any of the challenged statements to Mr. Bates. He had no role in preparing the press release and did not speak in the conference call, and these plaintiffs purchased their SDI stock before the challenged 10-K was issued. Second, plaintiffs do not plead a strong inference of scienter as to Mr. Bates. Plaintiffs attempt to portray Mr. Bates, an outside director, as having actual knowledge that SDI's early 2008 earnings guidance had no reasonable basis, but there are no allegations that support this theory. Instead, the Complaint against Mr. Bates relies almost entirely on the legally meaningless facts that he is an SDI director and an officer of Heidtman Steel, a customer that accounts for a mere 4% of SDI's sales. Seventh Circuit law does not permit securities fraud claims to proceed based on such scanty factual allegations or on a defendant's position. Finally, Mr. Bates cannot be held liable as a controlling person, both because there is no underlying violation and because there are no supporting allegations establishing his "control" over any other defendant.

In short, besides failing to overcome the arguments, in which Mr. Bates joins, that are set forth in the Company's Memorandum and in SDI and Keith Busse's Reply Memorandum of Law ("Company's Reply Memorandum"), plaintiffs have independently failed to plead a viable claim against Mr. Bates. This Complaint should be dismissed.

---

[1]   Defined terms have the same meaning as in John C. Bates's Memorandum Of Law In Support Of His Motion To Dismiss ("Bates's Memorandum"). Plaintiffs' Omnibus Memorandum In Opposition is referred to as "Plaintiffs' Opposition."

1

## II.   ARGUMENT

### A.   Plaintiffs Cannot Bring Claims Against Mr. Bates Based On Any Of The Three Challenged Statements

This Complaint is premised on supposed misstatements in three documents: a press release, a conference call, and a Form 10-K. These plaintiffs cannot bring a claim against Mr. Bates based on any of them. There are no allegations establishing that Mr. Bates played any role in preparing the press release (which he did not sign) or the conference call (in which he did not speak), and the Form 10-K was filed <u>after</u> these two individual plaintiffs purchased their SDI stock.

#### 1.   This Complaint Contains No Allegations Permitting Attribution Of The Press Release Or Conference Call To Mr. Bates

The Complaint attempts to attribute the press release and the conference call to Mr. Bates based on "group pleading." Compl. ¶ 13. Plaintiffs' Opposition, however, makes no mention of this doctrine, perhaps because the Seventh Circuit has rejected it. Bates Mem. at 6 (quoting <u>Pugh v. Tribune Co.</u>, 521 F.3d 686, 696 (7th Cir. 2008), <u>Makor Issues & Rights, Ltd. v. Tellabs</u>, 437 F.3d 588, 602 (7th Cir. 2006), <u>rev'd on other grounds</u>, 551 U.S. 308 (2007), and <u>Makor Issues & Rights, Ltd. v. Tellabs</u>, 513 F.3d 702, 710 (7th Cir. 2008)).

Instead, based on the portions of SDI's proxy that identified Mr. Bates's qualifications, Pl. Opp. at 27, plaintiffs contend that Mr. Bates should be held responsible for the press release because he attended board meetings and because it is "routine practice for earnings press releases to be circulated at Board meetings." <u>Id.</u>[2] Even assuming the truth of plaintiffs' unsupported speculation about "routine" corporate practices, plaintiffs offer no authority permitting attribution of a press release to an outside director based on the possible "circulation" of

---

[2]   They also argue that, because "no one signs the press releases," Mr. Bates should be held liable. <u>Id.</u> However, although Mr. Bates made no statements, the press release attributed various representations to Mr. Busse, and SDI's CFO signed the Form 8-K publicly filing the press release. Company's Mem. Ex. C.

2

unspecified documents. For the most part, the cases cited by plaintiffs are easily distinguishable SEC enforcement actions. McConville v. SEC, 465 F.3d 780, 787 (7th Cir. 2006), cited at Pl. Opp. 27, reiterated existing Seventh Circuit law in rejecting a CFO's argument that she could not be primarily liable for "significant participation in creating the corporate misstatements" included in a company's Form 10-K that she did not physically sign. Id. at 786-87. SEC v. First Jersey Sec., 101 F.3d 1450 (2d Cir. 1996), cited at Pl. Opp. 27, likewise specifically found after trial that the named defendant "participated in the fraudulent scheme" and was in fact "engaged in the purposeful planning of the pattern and repeated format of trading in which the respective branch offices engaged and that he orchestrated every facet of First Jersey's branch office network." Id. at 1471-72 (citation, internal punctuation omitted). In contrast, this Complaint fails to include allegations that Mr. Bates provided information or otherwise played any role in preparing the press release. Moreover, unlike the McConville and First Jersey defendants, Mr. Bates is not an officer of the issuing company. McConville, 465 F.3d at 787; First Jersey, 101 F.3d at 1458, 1473.[3] Neither case offers any support for the proposition that an outside director may be held liable for the contents of a press release that he is not alleged to have prepared.

And, in fact, there are no allegations in this Complaint showing that Mr. Bates played any role whatsoever in the preparation or dissemination of the press release. Bates Mem. at 5, 6-7. Plaintiffs make the bald statement that he "participated in the creation, development and reporting of the Company's internal budgets, plans, and projections," Pl. Opp. at 27, but the citation for this point, paragraph 44, says no such thing. Instead, it includes a conclusory

---

[3] Of course, if plaintiffs are suggesting that Mr. Bates could be held liable for "assisting" in someone else's fraudulent statement, Pl. Opp. at 27, they are wrong. Private litigants may not bring claims for aiding and abetting a primary violator. Central Bank of Denver, NA v. First Interstate Bank of Denver, NA, 511 U.S. 164, 178, 191 (1994); McConville, 465 F.3d at 787 n.11; see also Pugh, 521 F.3d at 697 ("Sito participated in a fraudulent scheme but had no role in preparing or disseminating Tribune's financial statements or press releases"; suggesting that such allegations violated prohibition on aiding and abetting liability).

3

allegation referring to the "Individual Defendants." Compl. ¶ 44(a). The Seventh Circuit, however, has emphasized the PSLRA's specificity requirement and rejected as insufficient allegations that do not identify individual defendants' roles. Pugh, 521 F.3d at 696 (cited at Bates Mem. at 5; agreeing that defendants could not be held liable "because they were not alleged to have participated in the preparation of any of the challenged statements"). The district courts in the Seventh Circuit have likewise repeatedly rejected analogous allegations directed to "the defendants." See, e.g., In re Harley-Davidson, Inc. Sec. Litig., __ F. Supp. 2d ___, 2009 WL 3233754, at *23 (E.D. Wis. Oct. 8, 2009) (finding inadequate allegations referring to the "Individual Defendants"); id. at *24 (finding inadequate substantially similar allegation based on defendants' "regular attendance at . . . meetings, receipt of multiple internal reports . . . and periodic financial reports"). The various cases plaintiffs cite for the proposition that those who participate in making fraudulent statements may be held liable for them, Pl. Opp. at 27-28, beg the question because they have no such allegations as to Mr. Bates.

Plaintiffs' efforts to hold Mr. Bates liable for statements in a conference call in which he concededly did not participate are even weaker. As noted in Mr. Bates's Memorandum, even if the group pleading doctrine were still viable, it does not apply to oral statements. Bates Mem. at 6 n.5. Plaintiffs now suggest that Mr. Bates should be held liable for Mr. Busse's statements based on some duty to correct Mr. Busse's oral representations. Pl. Opp. at 28-29. Plaintiffs cite no authority for the proposition that an outside director has an affirmative duty to correct the oral statements of a company's officers made at an event at which he is not even alleged to have been present, and Mr. Bates is unaware of any decision permitting such claims to proceed.[4]

---

[4] The only case plaintiffs cite for this point is another out-of-jurisdiction decision, Barrie v. Intervoice-Brite, Inc., 409 F.3d 653 (5th Cir. 2005). There, the Fifth Circuit held that plaintiffs had sufficiently attributed statements when they alleged that two company officers both participated in a conference call or road show at which one officer made a misstatement while the other, knowing of the falsehood, sat by and made no

4

The Seventh Circuit's rulings are clear: plaintiffs must have some specific basis for attributing specific statements to specific defendants. Pugh, 521 F.3d at 696. There are no such allegations as to Mr. Bates, and he accordingly cannot be held liable for the press release or the conference call, regardless of their contents.[5]

### 2. Seventh Circuit Law Establishes That These Individual Plaintiffs Have No Standing To Bring Claims Based On SDI's Form 10-K

Mr. Bates's argument with respect to the Form 10-K is very straightforward. The two individual plaintiffs purchased their shares of SDI before the Form 10-K containing the challenged statements was filed with the SEC. Accordingly, the price of the stock that they purchased could not have been influenced in any way by the Form 10-K. Plaintiffs' arguments to the contrary misread governing case law or rely on decisions that simply do not apply.

The Seventh Circuit has explicitly ruled that plaintiffs in a securities action prior to class certification do not have standing to bring claims for supposed false statements that were made after their purchases. Roots P'ship v. Land's End, Inc., 965 F.2d 1411, 1420 (7th Cir. 1992). "Such post-purchase statements cannot form the basis of Rule 10b-5 liability, because the statements could not have affected the price at which plaintiff actually purchased." Id. The court specifically rejected the argument that the plaintiff could proceed based on other purchasers' claims. Id. at n.6 ("Roots therefore cannot defeat dismissal by purporting to represent the interests of post-[statement] purchasers.").[6]

---

corrective statement. Id. at 656. The Fifth Circuit did not suggest that all of the company's directors who might subsequently have heard the statements could be attributed with those statements if they failed to issue independent statements correcting those representations by the officers.

[5] Of course, contrary to plaintiffs' statement on page 23 of their Opposition, Mr. Bates argues that, even aside from the standing issue, he cannot be held liable for any statements in the Form 10-K because plaintiffs fail to allege scienter.

[6] Plaintiffs cite to various decisions from other jurisdictions in which Roots does not apply. Pl. Opp. at 24-26. These cases have no relevance to this matter.

5

Plaintiffs' contention that <u>Roots</u> does not govern this matter, Pl. Opp. at 24,[7] is facially untenable in light of the Seventh Circuit's clear language and is also inconsistent with virtually every procedurally similar ruling in this jurisdiction. See, e.g., <u>Greater Pa. Carpenters Pension Fund</u>, 2005 WL 61480, at *7-8 (collecting cases). Although courts have not necessarily required <u>one</u> named plaintiff to have standing for every claim so long as another named plaintiff did, here, <u>both</u> named plaintiffs' claims are defective with respect to the Form 10-K. See, e.g., <u>id.</u> at *8 (drawing distinction between situations in which some named plaintiffs had standing to bring claims); <u>Davis v. SPSS, Inc.</u>, 385 F. Supp. 2d 697, 706 (N.D. Ill. 2005) (explaining that another decision had permitted claims to proceed because "[e]ven though each lead plaintiff [there] did not have standing to bring every claim, between the two of them they did have standing to pursue all the claims").

The contrary cases and theories cited by plaintiffs are nothing more than an effort to distract from clear Seventh Circuit case law. The potential effect of <u>Roots</u>' holding on class certification, Pl. Opp. at 24, is not relevant at the motion to dismiss phase. As one court explained, "<u>Roots Partnership</u> did not address the question of class certification. The essence of the holding there was that the plaintiff lacked standing to assert a claim based on any of the corporate issuer's statements. Having no claim whatsoever, the plaintiff could not represent a class that relied on those statements." <u>Feldman v. Motorola, Inc.</u>, No. 90-5887, 1993 WL 497228, at *4 (N.D. Ill. Oct. 14, 1993); <u>see also</u> <u>Davis</u>, 385 F. Supp. 2d at 706 (applying <u>Roots</u> and distinguishing decision cited by plaintiff "because it concerns whether the claims of the two

---

[7] The Seventh Circuit framed this dismissal in terms of loss causation, <u>Roots</u>, 965 F.2d at 1420, although district courts have typically used the language of standing. <u>See, e.g.</u>, <u>Greater Pa. Carpenters Pension Fund v. Whitehall Jewellers, Inc.</u>, No. 04-1107, 2005 WL 61480, at *7 (N.D. Ill. Jan. 10, 2005). The terminology is less important than the principle: a plaintiff may not advance Section 10(b) claims based on post-purchase statements at this phase of the litigation.

6

lead plaintiffs are typical of a plaintiff class and not whether a claim must be dismissed due to the plaintiff's lack of standing").[8]

Plaintiffs could have avoided this difficulty by including as a named plaintiff someone who purchased stock after the challenged 10-K statements. Although plaintiffs now ask for leave to amend to do so, Pl. Opp. at 25 n.10, they have not identified any individual who would actually qualify to bring the claims they wish to assert.

### B. Plaintiffs Have Failed To Include Allegations Establishing That Mr. Bates Had Or Should Have Had Knowledge Of Any False Statements

Besides failing to attribute any statement to Mr. Bates, this Complaint should be dismissed because plaintiffs do not set forth a strong inference of scienter. The only allegations of knowledge are conclusory and impermissibly group Mr. Bates with other defendants.

#### 1. Mr. Bates's Position As An Executive At Heidtman Steel Does Not Support A Conclusion Of Wrongful Knowledge

Plaintiffs assert at least four times in their brief that Mr. Bates "knew" that SDI's earnings guidance had no reasonable basis because, as chief executive officer of Heidtman Steel, he "knew" that Heidtman's orders would not increase. The Complaint does not include the underlying factual allegations required by Rule 9(b) and the PSLRA.

First, plaintiffs' only citations for this theory are paragraphs 34(a) and 34(d) of the Complaint. See Pl. Opp. at 5-6, 10, 15. The relevant portions of these subparagraphs state, in their entirety, that "defendants knew that Heidtman Steel, owned by defendant Bates and other

---

[8] Plaintiffs' claim that they have standing because there was a "common scheme" of ongoing fraud, Pl. Opp. at 23, is also wrong. The Seventh Circuit decisions to which they refer were not securities cases; rather, they addressed the concept of the "juridical link" by which a putative class member may sometimes assert identical claims against several defendants related through a conspiracy even if there are no specific facts as to some defendants. See Payton v. County of Kane, 308 F.3d 673, 678 (7th Cir. 2002) (reversing grant of motion to dismiss brought by county defendants in putative class relating to bail payments notwithstanding that no individual named plaintiff had claim against certain counties; applying "juridical link" doctrine and remanding for class certification determination); see also Bates Mem. 8-9 & cases cited therein (citing decisions rejecting "common scheme" argument in this context). Plaintiffs do not cite and defendants have not found any case in this jurisdiction applying this concept to an analogous securities claim at the motion to dismiss phase.

7

customers, would not be increasing orders in Q1 2009 and taking delivery of additional SDI product in Q1 2009, to reverse the adverse trend in demand for SDI products," and "given the continuing weakness in demand for SDI's products in Q1 2009 . . . and the lack of significant increases in orders from Heidtman Steel, defendants lacked a reasonable basis in fact for their earnings guidance."  Compl. ¶¶ 34(a), (d).  These are classic conclusory allegations because there is no explanation whatsoever of the basis for them.  Plaintiffs do not cite to any particular source for this information, much less explain why Mr. Bates in particular came to know this information at the particular time the "false" statements were made.  Higginbotham v. Baxter Int'l, Inc., 495 F.3d 753, 758 (7th Cir. 2007) (affirming dismissal when plaintiffs "offer[ed] no reason at all to infer knowledge"; specifically criticizing the complaint's failure "to document[]" their theories); Pugh, 521 F.3d at 696 (agreeing that allegations were "insufficient to establish liability" because complaint did not "allege any facts showing that he was aware of or recklessly disregarded the improper . . . practices" (emphasis added)); see also In re Guidant Corp. Sec. Litig., 536 F. Supp. 2d 913, 932 (S.D. Ind. 2008) (rejecting allegations contending that defendants must have known of product defects because they were "'core members of the senior management team'" who were "privy to proprietary information about [the Company's] growth and financial condition" because of lack of "particularized allegations indicating how or when Defendants came to possess information about product defects").

  Plaintiffs also fail to support their underlying premise that Heidtman Steel's failure to increase orders rendered the earnings guidance unreasonable.  Plaintiffs do not—because they cannot—contest that Heidtman only accounted for 4% of SDI's consolidated net sales in 2008.  Bates Ex. 1 at 9, 86.  Given this undisputed fact, plaintiffs do not explain how Heidtman's failure to increase its orders was so significant that supposed knowledge of its future orders is

8

equivalent to knowledge that SDI's earnings guidance was false. There is, for example, no allegation establishing that Mr. Bates knew that SDI's earnings guidance was predicated on any particular volume of Heidtman purchases, let alone on the assumption that Heidtman would increase orders. Plaintiffs' only effort to address this point is to say that Heidtman is the only customer mentioned by name in SDI's public filings. Pl. Opp. at 15 n.4. Heidtman was named, however, because it was SDI's largest single customer, Bates's Mem. at 3, not because SDI's earnings guidance was based on its orders.

Besides paragraph 34, there are no other allegations that even attempt to show that Mr. Bates had some basis for believing that SDI could not meet its earnings guidance. There are no confidential witnesses, there are no internal documents, and there are not even any detailed analyses of the company's finances. Accordingly, regardless of how many times plaintiffs assert that Mr. Bates "knew" that the earnings guidance was wrong, they have offered absolutely no basis by which any inference to this effect—much less a strong inference—could be drawn.

### 2. Plaintiffs' Arguments Rely On An Impermissible Interpretation Of The "Core Operations" Theory

Plaintiffs attempt to side-step their pleading obligations and avoid the deficiencies of their Complaint by reference to the "core operations" doctrine. Plaintiffs argue that, under this theory, so long as an issue generally is important to a company, knowledge of underlying facts regarding that issue can be attributed to the company and its "key officers." Pl. Opp. at 12. This approach to "core operations" is unsupported in law and would effectively undermine the PSLRA and Seventh Circuit precedent requiring particularized pleading as to each defendant.

First, virtually all of the cases plaintiffs cite—including the portions cited in their Opposition—refer to this doctrine as applying to "officers" and managers of a company. Id. at 12-13 (citing various cases, most of which explicitly refer to "officers"). Mr. Bates was not an

9

officer of SDI at any time. Compl. ¶ 11(B). The only two cases plaintiffs identify as referring to "directors" did not address similar facts. Sequel Cap., LLC v. Rothman, No. 03-678, 2003 WL 22757758, at *2, 11 (N.D. Ill. Nov. 20, 2003) (stating generally that officers and directors could be presumed to know of company's "deep financial difficulties"; so stating in case in which defendants who served as directors were also corporate officers); Lindelow v. Hill, No. 00-3727, 2001 WL 830956, at *6, 9 (N.D. Ill. July 20, 2001) (commenting generally that "directors" could be imputed with knowledge but so stating in case in which the director in question was also the president of the company involved in wrongful statements).

      Second, the claims at issue in this matter are too broad to fall within the "core operations" analysis: plaintiffs do not challenge a particular transaction or raise issues regarding a specific, unique product upon which the company's survival depended. Rather, they argue generally that steel production was important to SDI, thus its officers and directors must have known about the supposed errors in its earnings projections related to steel. See, e.g., Pl. Opp. at 14. This scenario is not at all analogous to the facts in the decisions plaintiffs cite. Some of those cases addressed claims regarding specific, identifiable aspects of business and including specific allegations relating to those problems. Schleicher v. Wendt, 529 F. Supp. 2d 959, 974 (S.D. Ind. 2007) (stating that "officers" can be presumed to know of facts "critical to a business's core operations or to an important transaction"; explaining that "defendants emphasized operating income as an important measure of the company's potential for a successful turnaround" and identifying specific allegations related to this issue (internal citations omitted)); In re Ulta Salon, Cosmetics & Fragrance, Inc., Sec. Litig., 604 F. Supp. 2d 1188, 1196 (N.D. Ill. 2009) (finding scienter adequately pled when complaint included "ample factual allegations" establishing problems with inventory levels, "warehouse management software problem and the resulting

build-up of inventory, including allegations that weekly internal memoranda were produced"). Other cases addressed companies that were dependent upon a specific, newly-developed technology. Lindelow, 2001 WL 830956, at *8 (applying variant of core operations theory to impute scienter to "top management" when claims were premised on launch of remote clinical monitoring technology that was "virtually the only business [of the company] by mid-1999 and constituted a 'core project' of . . . the corporate parent").[9] Here, there are no specific allegations about the particular issue or any contention that the issue related to a technology or problem that threatened SDI's "very survival."

### 3. Plaintiffs' Effort To Establish Scienter Through Stock Sales Disregards Governing Case Law And Publicly-Filed Documents Showing That Mr. Bates's Stock Sales Were Not Suspicious

In their Complaint and in their Opposition, plaintiffs contend that certain stock sales by Mr. Bates during the putative class period raise a strong inference of scienter because they show an effort to capitalize on the "artificial inflation" in SDI's stock before the "truth" was disclosed. In making this argument, plaintiffs utterly ignore extensive law from this jurisdiction that holds that stock sales without more are legally irrelevant because officers and directors routinely sell stock. Bates Mem. at 12-13 (quoting, inter alia, Pugh, 521 F.3d at 695 ("[B]ecause executives sell stock all the time, stock sales must generally be unusual or suspicious to constitute circumstantial evidence of scienter.")); Harley-Davidson, 2009 WL 3233754, at *28

---

[9] Danis v. USN Communications, Inc., 73 F. Supp. 2d 923 (N.D. Ill. 1999), is also distinguishable, as it is another decision imputing knowledge of "core operations" based on the principle that key management is assumed to know of a company's technological incapacity of meeting requirements that are central to its survival. Id. at 939 (citation omitted). The court so held, however, after concluding that group pleading survived the PSLRA and that plaintiffs need not plead any "individual defendant's role and duties" and "their corresponding knowledge" until after discovery. Id. at 939 n.9. This is of course inconsistent with the Seventh Circuit's rejection of group pleading and its specific mandate that plaintiffs set forth particularized facts identifying each defendant's role and supposed basis for knowledge. Pugh, 521 F.3d at 693; Makor, 437 F.3d at 603.

11

(summarizing Seventh Circuit case law; explaining that percentage of stock sold in relation to total holdings as well as overall trading history should be considered).

As explained in detail in Mr. Bates's Memorandum, plaintiffs have alleged nothing more than the legally irrelevant fact of stock sales. Bates Mem. at 12-13. Although plaintiffs do not dispute that context for sales is required before they can be considered suspicious, the Complaint does not compare Mr. Bates's class period sales with his historical practices or with his retained holdings, nor does it connect the sales with acquisition of specific inside knowledge. Id. at 13 & cases cited therein. Plaintiffs also do not challenge—because they could not—the fact that the absence of sales by some insiders and the actual increase in holdings by others weighs against scienter in this jurisdiction.[10] Id. (citing Higginbotham, 495 F.3d at 759). Plaintiffs' allegations regarding Mr. Bates's stock sales do not establish scienter because they have not included allegations explaining why the unique circumstances of these particular sales are suspicious.

Although it was not Mr. Bates's burden to do so, the numerous public filings attached to his Memorandum also affirmatively demonstrate that, in fact, the class period sales were not suspicious. Rather, his publicly filed Forms 4 establish that, over the course of many years, Mr. Bates has routinely sold large amounts of stock. Bates Mem. at 14-16 & exhibits thereto. Plaintiffs do not mention these documents, which, again, utterly undermine their claim that the

---

[10] In keeping with their overall practice of citing the law of other jurisdictions even when there is a Seventh Circuit case on point, plaintiffs rely on cases from the Ninth, Sixth, and Tenth Circuits to argue that the absence of sales by other SDI officers and directors is not meaningful. Pl. Opp. at 19 n.5. They relegate the Seventh Circuit's express statement to the contrary to the end of a footnote. Id. Rather than mildly suggesting that an absence of sales "could lead to one possible inference" against scienter, id., Higginbotham phrased its comments in much stronger terms. The Seventh Circuit commented on the significance of plaintiff's failure to allege that sales by "senior managers as a whole were abnormally high during the period before public disclosure of the . . . problem. Managers sell stock all the time . . . ; if two of Baxter's senior managers sell blocs during the average month, plaintiffs can't get any mileage out of what happened in April. One possible inference is that the absence of sales by other managers who would have been in the know . . . implies that nothing was thought to be out of the ordinary in April 2004. Because Tellabs instructs us to consider all potential inferences, and not just those that favor plaintiffs, the absence of any demonstration that April 2004 was an unusual period for managerial sales means that the complaint lacks the required 'strong' demonstration of scienter." 495 F.3d at 759. That is, Higginbotham supports the conclusion that the absence of sales by SDI insiders is alone enough to dismiss this Complaint as to Mr. Bates for failure to allege scienter.

stock sales are evidence of scienter.  Harley-Davidson, 2009 WL 3233754, at *28 (rejecting argument that stock sales demonstrated scienter because "records presented to the court" contradicted suggestion that they were "dramatically out of line with prior trading history").

### C. This Complaint Does Not Establish Control Person Liability By Mr. Bates

Finally, plaintiffs fail to establish control person liability on the part of Mr. Bates.  First, for the reasons set forth in the Company's Reply Memorandum, plaintiffs have failed to set forth any primary violation by any person that Mr. Bates allegedly controlled.  See Company's Reply Memorandum; see also Bates Mem. at 16-17.  Second, even if they could plead a primary violation by some other defendant, there are no allegations establishing that Mr. Bates exercised "general control" over SDI's operations and that he had the power to control the particular activity on which the primary violation was predicated.  Bates Mem. at 16.  Plaintiffs' only argument to the contrary is that Mr. Bates was a director and that he "knew" that decisions he made as CEO of Heidtman Steel would "significantly influence[] and affect[]" SDI.  Pl. Opp. at 37.  As already noted, however, SDI's public filings identified Heidtman as a customer responsible for only 4% of its net sales, a statement that plaintiffs do not challenge.  Even leaving aside the fact that the Complaint does not contain allegations that Mr. Bates "knew" that decisions at Heidtman would have any particular effect on SDI, there is no rational basis to draw such a conclusion—plaintiffs certainly do not explain how a 4% customer's decisions could "significantly influence" SDI such that Mr. Bates is necessarily transformed into a controlling person for purposes of the securities laws.

### III.   CONCLUSION

For the foregoing reasons, defendant John C. Bates respectfully requests that this Court grant his motion to dismiss the Complaint.

Dated: November 9, 2009

Respectfully submitted,

/s/ Christian J. Mixter
Christian J. Mixter (*pro hac vice*)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: 202-739-3000
Fax: 202-739-3001
Email: cmixter@morganlewis.com

Jill Baisinger (*pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: 215-963-5000
Fax: 215-963-5001
Email: jbaisinger@morganlewis.com

Steven L. Jackson
Baker & Daniels LLP
111 E. Wayne St., Suite 800
Fort Wayne, IN 46802-2387
Telephone: 260-424-8000
Fax: 260-460-1700
Email: steven.jackson@bakerd.com
*Counsel for Defendant John C. Bates*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2009, a copy of the foregoing was filed electronically or by U.S. Mail. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Scott D. Gilchrist<br>COHEN & MALAD LLP<br>One Indiana Square, Suite 1400<br>Indianapolis, IN  46204<br>Tel:  317-636-6481<br>Fax:  317-636-2593<br>sgilchrist@cohenandmalad.com | Cathleen M. Shrader<br>Robert S. Walters<br>Jeremy N. Gayed<br>Barrett & McNagny, LLP<br>215 East Berry Street<br>Fort Wayne, IN  46802<br>Tel:  260-423-9551<br>Fax:  260-423-8920<br>cms@barrettlaw.com |
| Deborah R. Gross<br>Robert P. Frutkin<br>Law Offices of Bernard M. Gross, P.C.<br>Suite 450, Wanamaker Bldg.<br>100 Penn Square East<br>Philadelphia, PA  19107<br>Tel:  215-561-3600<br>Fax:  215-561-3000<br>debbie@bernardmgross.com | Joel G. Chefitz<br>Jeffrey D. Baltruzak<br>Mary E. Gardner<br>McDermott, Will & Emery<br>227 W. Monroe Street<br>Chicago, IL  60606<br>Tel:  312-984-6484<br>Email:  jchefitz@mwe.com |

Laurence Paskowitz
PASKOWITZ & ASSOCIATES
60 East 42nd Street, 46th Floor
New York, NY  10165
Tel:  212-685-0969
Fax:  212-685-2306

Roy L. Jacobs
ROY JACOBS & ASSOCIATES
60 East 42nd Street, 46th Floor
New York, NY  10165
Tel:  212-685-0960
Fax:  212-685-2306

John C. Theisen
Maria M. Kolp
Theisen Bowers & Associates, LLC
810 South Calhoun Street, Ste. 200
Fort Wayne, IN  46802
Tel:  260-422-4255
Fax:  260-422-4245

                                  By: Christian J. Mixter