IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

MARC PANASUK, DAVID ROSS, and
DAVID JOHN THOMAS on behalf of
themselves and all others similarly situated,

                Plaintiffs,

v.                                1:09-cv-00066-TLS-RBC

STEEL DYNAMICS, INC., KEITH BUSSE,
and JOHN C. BATES,

                Defendants.

**STEEL DYNAMICS, INC. AND KEITH BUSSE'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
JOINT MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

| | |
|---|---|
| Robert S. Walters | Joel G. Chefitz *(Pro Hac Vice)* |
| Cathleen M. Shrader | Mary E. Gardner *(Pro Hac Vice)* |
| Jeremy N. Gayed | Jeffrey Baltruzak *(Pro Hac Vice)* |
| BARRETT & MCNAGNY LLP | MCDERMOTT WILL & EMERY LLP |
| 215 East Berry Street | 227 West Monroe Street |
| Fort Wayne, Indiana 46802 | Chicago, Illinois 60606 |
| Tel: (260) 423-9551 | Tel: (312) 372-2000 |
| Fax: (260) 423-8920 | Fax: (312) 984-7700 |
| rsw@barrettlaw.com | jchefitz@mwe.com |
| cms@barrettlaw.com | mgardner@mwe.com |
| jng@barrettlaw.com | jbaltruzak@mwe.com |

                                              *Attorneys for Defendants*
                                              *Steel Dynamics, Inc. and Keith Busse*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................3

    1.    Plaintiffs Cannot Identify a Misstatement .............................................................3

    2.    Plaintiffs Fail To Allege the "Who, What, When, Where, or Why" .......................7

    3.    The PSLRA's Safe Harbor for Forward-Looking Statements Bars
This Action........................................................................................................8

        a.    On the Facts Pleaded, the Court Should Determine
Whether SDI's Cautionary Language Was "Meaningful"
as a Matter of Law ..................................................................................8

        b.    Defendants' Cautionary Language Is Meaningful......................................9

        c.    Plaintiffs' Allegations of Actual Knowledge of Falsity Are
Both Irrelevant and Insufficient...............................................................11

    4.    Plaintiffs Fail To Plead Scienter With the Requisite Particularity ........................12

    5.    Plaintiffs Fail To Plead Loss Causation................................................................14

    6.    Plaintiffs Cannot Plead a Control-Person Claim ..................................................14

CONCLUSION....................................................................................................................15

## TABLE OF AUTHORITIES

*Cases* **Page**

*Asher v. Baxter Int'l Inc.*, 377 F.3d 727 (7th Cir. 2004)..............................................................8, 9

*Central Laborers' Pension Fund v. SIRVA, Inc.*,
  No. 04 C 7644, 2006 WL 2787520 (N.D. Ill. Sept. 22, 2006)............................................11

*Desai v. General Growth Properties, Inc.*, No. 09 C 487,
  --- F. Supp. 2d ---, 2009 WL 2971065 (N.D. Ill. Sept. 17, 2009)........................................8

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005)......................................................................14

*In re Allied Prods. Corp.*, No. 99 C 3597,
  2000 WL 1721042 (N.D. Ill. Nov. 15, 2000) .....................................................................13

*In re Harley Davidson, Inc. Sec. Litig.*, No. 05-C-0547,
  --- N.E.2d ---, 2009 WL 3233754 (E.D. Wis. Oct. 8, 2009)................................................9

*In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152 (N.D. Ill. 2004) ..........................8, 11

*In re Novastar Fin. Inc. Sec. Litig.*, 579 F.3d 878, 883 (8th Cir. 2009) ..........................................7

*Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009).....................................8

*Johnson v. Tellabs, Inc.*, 262 F. Supp. 2d 937 (N.D. Ill. 2003) .....................................................12

*Makor Issues & Rights, Ltd. v. Tellabs Inc.* (*Tellabs II*),
  513 F.3d 702 (7th Cir. 2008) ......................................................................................12, 14

*Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008)........................................................................14

*Silverman v. Motorola Corp.*, No. 07 C 4507,
  2008 WL 4360648 (N.D. Ill. Sept. 23, 2008) ....................................................................11

*Strum v. Marriott Marquis Corp.*, 85 F. Supp. 2d 1356 (N.D. Ga. 2000) .......................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .................................................3

*Ulta Salon, Cosmetics & Fragrance, Inc. Sec. Litig.*,
  604 F. Supp. 2d 1188 (N.D. Ill. 2009) ...............................................................................13

*Western Penn. Elec. Employees Pension Trust v. Plexus Corp.*,
  No. 07C0582, 2009 WL 604276 (E.D. Wis. Mar. 6, 2009)................................................8

## TABLE OF AUTHORITIES (cont.)

*Cases*         **Page**

*Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110 (C.D. Cal. 2005)..............................................8

_____

*Statutes*         **Page**

15 U.S.C. § 78t(a) ...............................................................................................................14

15 U.S.C. § 78u-4(b)(2) ......................................................................................................12

## INTRODUCTION

While acknowledging the PSLRA's rigorous requirements for surviving a motion to dismiss in a securities case, Plaintiffs' Opposition nonetheless fails to meet head-on *any* of the five independent grounds raised by Steel Dynamics, Inc. ("SDI") and Keith Busse ("Busse") in their Motion to Dismiss. Each ground is independently sufficient to end this litigation.

First, Plaintiffs fail to identify any actionable misrepresentation. Plaintiffs cannot deny, and in fact quote from, the repeated negative statements by SDI and Busse about SDI's inventory, the demand for its products, and the state of the steel industry generally. Trying to make up for legally insufficient allegations with rhetoric, Plaintiffs concede that SDI's and Busse's predictions were dire, but quibble over the choice of negative adjectives. This is simply not the stuff of which actionable securities fraud claims are made.

Second, Plaintiffs fail to satisfy the heightened particularity requirements for pleading a fraud claim imposed by both the Federal Rules and the PSLRA. Plaintiffs fail to specify the most basic of information: what the alleged fraud was. Plaintiffs merely repeat the facially inadequate shotgun allegations of the Amended Complaint.

Third, in a blatant attempt to avoid the fatal blow that the PSLRA's safe harbor for forward-looking statements deals to their case, Plaintiffs remarkably contend that their lawsuit, which they framed as one based on an allegedly fraudulent earnings forecast, now involves only fraud relating to certain ill-defined present or historical "facts." But Plaintiffs cannot overcome the safe harbor by ignoring the centrality of the first-quarter earnings forecast to the Amended Complaint.

Fourth, even assuming any actionable misrepresentation, Plaintiffs fail to allege specific facts sufficient to raise a strong inference of scienter. Plaintiffs instead rely on vague allegations

1

about the Defendants' positions within the company and what they "must have" known. These bare conclusions fail to raise any inference of scienter, let alone a strong inference, as the PSLRA requires.

Fifth, Plaintiffs have not adequately alleged loss causation, given that the March Update, far from being a "corrective" disclosure, was entirely consistent with SDI's earlier statements. Moreover, in an action that purports to be a fraud-on-the-market case, Plaintiffs' concession that it was well known in the market that the steel industry suffered demand and inventory problems is inconsistent with their claim that any "revelations" in the March Update caused them any loss.

Plaintiffs have not adequately addressed any—let alone all—of the five independent grounds Defendants raise. Further, Plaintiffs' Opposition ignores—and thus concedes—many of SDI and Busse's other arguments, including that:

- The District Court's critical role as gatekeeper under the PSLRA imposes on the Court the responsibility to dismiss actions that do not satisfy the statute's strictures, thus accomplishing the statute's legislative purpose to protect companies from abusive litigation and to actually encourage companies to make forward-looking statements. (SDI Memo. [dkt#45] at 2-3, 7-8);

- Plaintiffs cannot allege scienter with conclusory allegations, such as that SDI violated generally accepted accounting principles (GAAP), especially in light of the fact that they admit SDI was only required to "evaluate its inventory at each quarter-end," not more often (AC ¶33), nor can Plaintiffs allege scienter based on disconnected and nonsensical arguments regarding the timing of certain inventory write-downs (SDI Memo. at 23-25);

- Any claims Plaintiffs attempt to manufacture from inventory figures contained in the 2008 Form 10-K fail, since that information was not only disclosed, but was actually discussed in the January Release and January Call (SDI Memo. at 24);

- Plaintiffs cannot cure their failure to plead with particularity by resorting to "group pleading" or by alleging scienter on the part of individuals based solely on their positions within SDI (SDI Memo. at 21-23; *id.* at 21 n.17 (incorporating Bates Memo. [dkt#42] at 7-9)); and

- Since the filing of the Amended Complaint, SDI's stock has traded at prices far in excess of what any Plaintiffs (or potential class members) paid for their shares. (SDI Memo. at 3 n.2).

2

As Plaintiffs' best attempt at manufacturing a securities fraud claim, the Amended Complaint fails as a matter of law and should be dismissed with prejudice.

## ARGUMENT

**1.    Plaintiffs Cannot Identify a Misstatement.**

While acknowledging that the Court must "assess all the allegations holistically" (Opp. at 8), Plaintiffs fail to abide by that requirement.[1] Instead, they cut-and-paste sentence fragments from SDI's January Release and January Call, take the phrases out of context, and then allege "fraud" on the reasoning that SDI's unfavorable statements were not quite unfavorable enough. Plaintiffs' tactics cannot save their Amended Complaint. If anything, their argument constitutes an inherent admission that Defendants' statements were conditional and, on the whole, negative, all of which undermines the essential fraud alleged.

As confirmed by the block quotes filling the opening pages of Plaintiffs' Opposition (Opp. at 2-5), the Amended Complaint acknowledges that SDI's first quarter 2009 forecast was subject to substantial uncertainty and a lack of "visibility":

> It is strange to be reporting the best year in the company's history and at the same time the **company's worst quarter**. The steel industry **took it on the chin in the fourth quarter as orders dried up, and Steel Dynamics was not exempted**. The combination of **weaker demand**, **inventory reductions** in both distribution and at the OEM level, and the **commercial paralysis** brought about by **tight credit markets** led to **very slow order activity**. This resulted in fourth-quarter production curtailments at our mills and metals-recycling facilities. We have started the new year with somewhat better activity, but **we cannot be certain how long it will take the steel and scrap markets to return to more normal demand patterns**. All of our SDI facilities are currently **operating well below capacity** . . . .

---

[1] Plaintiffs cannot divert this Court from its duty to look holistically at all of the disclosures made by SDI and Busse and not simply those selectively quoted by Plaintiffs. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007) ("We reiterate . . . that the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically.") (citations omitted); *Strum v. Marriott Marquis Corp.*, 85 F. Supp. 2d 1356, 1366 (N.D. Ga. 2000) (holding the court cannot be a gatekeeper under the PSLRA "if plaintiffs are free to quote selectively or out of context from the documents that they rely upon").

3

> **We are optimistic** that, even if we continue to encounter lackluster demand for steel and scrap for several quarters, we will return to profitability in the first quarter and remain profitable in 2009, **assuming no recurrence of dramatic price swings** such as those experience in the second half of 2008. **Our preliminary estimate** is that we could achieve earnings of $0.05 to $0.15 per diluted share in the first quarter. If needed, further guidance will follow later in the quarter **as visibility improves**. We continue to **believe** that earnings for the full year 2009 **could, under somewhat improved circumstances**, be comparable to those achieved in 2008.

(Opp. at 2-3, quoting AC ¶ 26 and January Release, emphasis added.)

Plaintiffs likewise acknowledge that SDI's reports of bad news continued in the January Call accompanying the January Release:

> [The fourth quarter of 2008] obviously **was full of pain and agony**, most of which was felt in our scrap and scrap processing divisions where **substantial losses** . . . were incurred, which would tell you that most of the loss we're reporting was at this point in time in that segment and – as expected, I think – and much of it was operating in nature. When scrap goes from $875 a ton, for prime goods, down to $175 a ton month-by-month until it reached its bottom **you can imagine the losses were substantial**. And I'm happy to be able to report that **we think** that the processing division will be back in the black in the first quarter and we'll have an operating profit during the quarter, so we're pleased about that.

(Opp. at 3, quoting AC ¶ 27 and January Call, emphasis added.)

> As Mark said earlier, the inventories at the scrap processing unit are in pretty good shape, **but flow is running at what you say, half speed, or thereabout**. So flow is down due to the industrial environment and we operate for the most part in **a winter climate where flows are impacted seasonably as well**. **So – and of course flows would be down because of the automotive shutdowns that occurred throughout in late December and have continued throughout the month of January**.

(Opp. at 4, quoting AC ¶ 28 and January Call, emphasis added.)

> The pricing is in good shape now at five of the five, you might say, but **we have a lot of inventory at Butler**. We probably – and when you look at it all collectively, the push come to shove, we can probably wring 75 to $100 million of cash out of those inventories by allowing them to decline. **It's tough to get them to decline when you're operating at only about 50%, thus they've remained high at flat-rolled throughout the quarter**, but as I said in really in pretty good shape elsewhere throughout the company.

4

(Opp. at 4, quoting AC ¶ 29 and January Call, emphasis added.)

Even highlighting one of Busse's many stated "assumptions" in the January Release and January Call that SDI "will run our flat rolled divisions at about 60% in the first quarter" (Opp. at 4, January Release at 2), Plaintiffs quote Busse's prediction:

> Yeah, **that was just in flat-rolled, that 60%**. We're probably going to operate at about **33% to 40% best case** in Structural, and probably somewhere around **60% best case** in engineered bars, **50 to 60%**, same way with small shape. **So the aggregate is something less than 60% for the quarter**.

(Opp. at 5, quoting AC ¶ 29 and January Call, emphasis added.)

Given the conditional, cautious, and overall negative nature of the statements above, Defendants are left with the very question the PSLRA does not permit Plaintiffs to leave unanswered: Where's the fraud? Any fair and holistic reading of the entire January Release and January Call shows that Busse's statements were negative and conditional regarding SDI's inventory levels, customer demand, and the prospects for Q1 2009. Plaintiffs have not specifically alleged that any of these statements were false. To the contrary, Plaintiffs appear to argue that these statements were *too true*. This cannot serve as the basis for a fraud claim.

Indeed, Plaintiffs are so hard-pressed to identify any specific misrepresentation that they point to *other negative statements by Busse* to prove that his admittedly cautious statements in the January Release about first quarter demand were somehow "fraudulent" for not being gloomy enough: "Weakened demand at the OEM level also continued into the first quarter of 2009 and was acknowledged by Busse who stated on the [January Call] that 'automotive shutdowns that occurred in late December and [*sic*] have continued throughout the month of January.'" (Opp. at 10.) Plaintiffs' argument is self-defeating. They cannot allege that Busse's statements in the January Release were overly optimistic or fraudulent by citing to similarly negative and non-contradictory statements in the concurrent January Call.

5

Plaintiffs also argue that Busse's stated "assumption" and his forecast of aggregate running rates of "something less than 60% for the quarter" were somehow fraudulent because an outside trade association stated that all United States steel producers as a group were running at 43 percent "through mid-January 2009." (Opp. at 10-11.) This is a non sequitur. Plaintiffs cannot base a fraud claim on some trade association survey that does not even purport to speak to the veracity of any of SDI's statements, and which, on its face, indicates nothing more than that the domestic steel industry may have been generally doing worse than SDI. The generalized observations in an undated trade association survey are simply not material to whether SDI correctly represented its own anticipated performance: SDI could run at "something less than 60%" while the steel industry overall ran at 43 percent.[2] Such an attenuated argument fails to establish falsity, quite apart from the issue of fraud.

Similarly, Plaintiffs try to create a fraud by juxtaposing SDI's announcement that 2008 was "the best year in the company's history"[3] with its allegations that SDI was accumulating significant inventory. (Opp. at 11.) Once again, Plaintiffs' argument is a non sequitur. There is nothing inconsistent about SDI's having had a tremendous year in 2008 despite experiencing a terrible fourth quarter, during which it began to accumulate inventory as a consequence thereof. In the end, with no inconsistency between SDI's January and March Releases from which to manufacture a fraud claim, Plaintiffs are reduced to quibbling over whether fraud exists because SDI described demand as "lackluster" instead of "declining." (Opp. at 10.) Incredibly, Plaintiffs ask the Court to hold that the difference between these two words amounts to a cognizable claim for federal securities fraud. It does not.

---

[2] Indeed, Busse stated in the January Call that the 60 percent figure was just for SDI's flat-rolled division; the other divisions were expected to operate at lower percentages. (Opp. at 5, quoting AC ¶ 29 and January Call.)

[3] Plaintiffs again manipulatively parse language by excluding the second part of this statement that the fourth quarter of 2008 had been the "worst in company history." (Opp. at 2, quoting AC ¶ 26 and January Release.)

6

**2.     Plaintiffs Fail To Allege the "Who, What, When, Where or Why."**

Plaintiffs, offering nothing more than these same non sequiturs, also contend that they pleaded "why" the statements they quote in the Amended Complaint are fraudulent. (Opp. at 9-11.) But as the Eighth Circuit recently observed, "absent an indication of precisely *what* statements [plaintiff] alleges to be misleading, it is difficult, if not impossible, to determine whether the complaint adequately specified *why* each statement was misleading." *In re Novastar Fin. Inc. Sec. Litig.*, 579 F.3d 878, 883 (8th Cir. 2009) (affirming dismissal for failure to specify each allegedly misleading statement where complaint simply reproduced excerpts of public filings and calls). Plaintiffs do not dispute any of the case law cited by SDI that a securities fraud complaint may not simply quote verbatim from annual reports and press releases, leaving the court and the defendants to guess which statements are alleged to be fraudulent. (SDI Memo. at 18-19.) This is all the Amended Complaint offers.

In a one-sentence "response," Plaintiffs incredibly do nothing more than once again quote the entirety of paragraphs 25-31 of the Amended Complaint and assert they have, in fact, satisfied the *specificity* requirement. (Opp. at 9.) However, these statements are as insufficient and overgeneralized now as when they were set forth in the Amended Complaint itself. Merely citing them again does not render Plaintiffs' allegations specific enough to satisfy the PSLRA. Moreover, neither the Amended Complaint nor the Opposition demonstrates how statements such as "[n]et sales grew to a record $8.1 billion" (AC ¶ 25), "[t]he steel industry took it on the chin in the fourth quarter" (AC ¶ 26), "we're thankful to have that quarter behind us" (AC ¶ 27), and "flows would be down because of the automotive shutdowns that occurred throughout in late December and have continued throughout the month of January" (AC ¶ 28) constitute actionable fraud. Plaintiffs' cavalier approach to pleading fails to satisfy either Rule 9(b) or the PSLRA.

7

**3.     The PSLRA's Safe Harbor for Forward-Looking Statements Bars This Action.**

   **a.     On the Facts Pleaded, the Court Should Determine Whether SDI's Cautionary Language Was "Meaningful" as a Matter of Law.**

Plaintiffs contend that a fact issue exists as to whether SDI's cautionary language was "meaningful." To the contrary, the "applicability of the Safe Harbor *is a determination of law, not one of fact*" and "is appropriate on a Motion to Dismiss." *Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1122 n.4 (C.D. Cal. 2005) (emphasis added); *see also Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 258 & n.27 (3d Cir. 2009) (noting courts can determine adequacy of cautionary language under the safe harbor as a matter of law).

Plaintiffs cast a false light on the determination of what constitutes meaningful and cautionary language by mischaracterizing language from *Asher v. Baxter Int'l Inc*., 377 F.3d 727 (7th Cir. 2004), and implying that it is "difficult, if not impossible" to make this determination at the pleading stage.[4] (Opp. at 30.) To the contrary, as a court in this Circuit recently noted:

> [T]he *Asher* Court *did not state or imply that a safe harbor defense could never be resolved on a motion to dismiss; the decision to remand was based on the nature of the record in the case*. The record in the present case is different: the cautionary language identifies and discusses the risk at issue—future order placement; additionally, defendants' cautionary language is not static, but changes over time to reflect new risks and problems Plexus encounters.

*Western Penn. Elec. Employees Pension Trust v. Plexus Corp.*, No. 07C0582, 2009 WL 604276, at *8 n.7 (E.D. Wis. Mar. 6, 2009) (citations omitted) (emphasis added). *Asher* "does not mean that where cautionary language speaks to the risks that have come to pass, consideration at the preliminary stages is inappropriate. To the contrary, *the statutory scheme anticipates such*

---

[4] Read in context, the *Asher* court used the phrase "difficult, if not impossible' to describe its struggle to interpret the language of the safe harbor statute. *See Asher*, 377 F.3d. at 729. The Court did *not* state that determining the adequacy of cautionary language as a matter of law is "impossible," nor did it hold that such a determination is generally a fact issue. Courts in this Circuit continue to dismiss securities fraud actions under the safe harbor. *See, e.g.*, *Desai v. General Growth Properties, Inc*., No. 09 C 487, --- F. Supp. 2d ---, 2009 WL 2971065, at *7 (N.D. Ill. Sept. 17, 2009); *Western Penn. Elec.*, 2009 WL 604276, at *8-*9; *In re Midway Games, Inc. Sec. Litig*., 332 F. Supp. 2d 1152, 1168 (N.D. Ill. 2004).

8

*consideration . . . ."* *In re Harley Davidson, Inc. Sec. Litig.*, No. 05-C-0547, 2009 WL 3233754, at *21 (E.D. Wis. Oct. 8, 2009) (emphasis added). Given the differences between this case and *Asher*,[5] Plaintiffs may not ignore the fatal import of SDI's specific and detailed warnings.

      b.      **Defendants' Cautionary Language Is Meaningful.**

Cautionary language is "meaningful" if the company reveals "principal and important" risks that could cause results to differ materially from those forecast in the forward-looking statement. *See Asher*, 377 F.3d at 730. Plaintiffs argue that SDI's cautionary warnings were mere "boilerplate" (Opp. at 31-32), but that is demonstrably wrong. A cautionary statement constitutes boilerplate only if it is generic. As the Seventh Circuit has explained:

> Plaintiffs say that Baxter's cautions were boilerplate, but they aren't. Statements along the lines of "all businesses are risky" or "the future lies ahead" come to nothing other than caveat emptor (which isn't enough); [Baxter's] statements, by contrast, at least included Baxter-specific information and highlighted some parts of the business that might cause problems.

*Asher*, 377 F.3d at 733. Far from being general and lacking specificity, SDI's cautionary statements were overloaded with warnings of specific risks and uncertainties that could cause investment results to differ from those anticipated or predicted. (*See* SDI Memo. at 10-14.) For example, in the "Risk Factors" section of its 2007 Form 10-K SDI warned: "Our level of production and our sales and earnings are subject to significant fluctuations as a result of the *cyclical nature of the steel industry*, *the scrap metal recycling industry, and some of the industries we serve*," such as "the *automotive, oil and gas, gas transmission, residential and commercial/industrial construction*, *commercial equipment,* [*and*] *rail transportation* [*industries*] . . . ." (2007 Form 10 K at 25 (emphasis added)) Similarly, SDI's "Risk Factors" in

---

[5] In *Asher*, the Court refused to dismiss based on the safe harbor, where it found that Baxter possibly omitted important variables from its cautionary language and knowingly failed to warn investors of risks it believed to be principal and important. *Asher*, 377 F.3d at 734. Here, the facts could not be more different. As the Court can examine for itself (SDI Memo. at 10-14), SDI's risk language warned investors specifically, emphatically, and repeatedly of the very risks that came to pass.

9

its 2008 Form 10-K cautioned about the impact of a "prolonged recession" and the "worldwide economic downturn" on steel consumption. (2008 Form 10-K at 21, 22). In other words, SDI's warnings predicted exactly what transpired as the overall economy imploded during the first quarter of 2009: As the steel-reliant industries SDI serves suffered, so too did SDI's business.

SDI also surrounded the very earnings forecast at issue here with further specific warnings, which hedged and qualified the forecast with explicitly conditional language that it was dependent upon on "improved circumstances" economically, was only a "very preliminary estimate," and that later guidance would necessarily follow "as visibility improves." (See SDI Memo. at 12-13.) No rational investor could properly invest based on a forecast without regard to these warnings.[6] SDI's extensive, fact-specific, and detailed cautionary statements are the opposite of boilerplate.

Plaintiffs struggle to find at least one thing they can argue that SDI failed to mention, stating that SDI "made no mention of the actual, known risks which already materialized, *i.e.*, that Heidtman Steel would not be taking orders or taking delivery of additional SDI products in Q1 2009 . . . ; that SDI's operations were running at less than 50% of capacity; and that SDI's inventories were at excessive levels . . . ." (Opp. at 32.) But Plaintiffs fail to inform the Court that the entirety of Heidtman's orders accounted for just 4% of SDI's total orders in 2008. *See* 2008 Form 10-K at 9. Given the publicly available and judicially noticeable facts, it is apparent that a drop in Heidtman's orders would not have been a "principal or important" risk to SDI.

Further, as quoted at length in Plaintiffs' Opposition, SDI provided specific warnings of the "capacity" and "inventory" risks Plaintiffs now raise. Busse cautioned that one of his

---

[6] As a further example, Busse cautioned: "we cannot be certain how long it will take the steel and scrap markets to return to more normal demand patterns"; that "we continue to encounter lackluster demand for steel and scrap"; and that his predictions regarding any potential profitability were explicitly conditioned on their being "no recurrence of dramatic price swings such as those experienced in the second half of 2008." (January Release at 12.)

"assumptions" was that flat-rolled would run at about 60 percent in the first quarter, but that other divisions would run at much lower percentages "[s]o, *the aggregate is something less than 60%* for the quarter." (Opp. at 5, emphasis added.)  Busse also warned that "we have a lot of inventory at Butler"; that inventories have "remained high," and that "it's tough to get [inventories] to decline when you're only operating at about 50%." (*Id.* at 4.)  Plaintiffs quote these warnings, and then deny the existence of the same warnings in their effort to evade application of the safe harbor for forward-looking statements.  SDI's cautionary language is, however, plainly meaningful as a matter of law.  The Amended Complaint should be dismissed.

      **c.**     **Plaintiffs Allegations of Actual Knowledge of Falsity Are Both Irrelevant and Insufficient.**

The first prong of the safe harbor (meaningful cautionary language) is independently dispositive.  Thus, any allegations that Defendants made the statements alleged with actual knowledge of their falsity, even if true, are "irrelevant" to the fatal impact of the first prong to the Amended Complaint.  *See, e.g.*, *Midway Games*, 332 F. Supp. 2d at 1168; *Silverman v. Motorola Corp.*, No. 07 C 4507, 2008 WL 4360648, at *13 (N.D. Ill. Sept. 23, 2008); *Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 04 C 7644, 2006 WL 2787520, at *23 (N.D. Ill. Sept. 22, 2006).

But even if Plaintiffs could escape the first prong of the safe harbor by showing that Defendants failed to use meaningful cautionary language,[7] dismissal of Plaintiffs' Amended Complaint would still be independently required under the safe harbor's third prong, because Plaintiffs have not shown (and cannot show) that Defendants made the forward-looking statements with actual knowledge of their falsity.  To survive a motion to dismiss under the third prong of the safe harbor, Plaintiffs must show facts that "support a *strong inference* that the

---

[7] As noted in SDI's opening brief, in the interests of brevity, Busse and SDI are not raising in this Motion the second prong (materiality) of the safe harbor. (SDI Memo. at 14 n.15).

11

defendant acted knowingly" in making the allegedly fraudulent representation. *Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 848 (N.D. Ill. 2003) (emphasis added) (citations omitted). Here, Plaintiffs allege only that SDI's forward-looking statements were "made without a reasonable basis or disclosed in other than good faith" and that "Defendants failed to disclose that SDI suffered from diminishing demand for its products . . . ." (Opp. at 34.) These generalized and bare conclusions simply are insufficient to raise a strong inference that any Defendant *actually knew* the projections at issue were *false* when made.[8] The third prong of the safe harbor therefore independently applies, and the Amended Complaint should be dismissed.

**4.     Plaintiffs Fail To Plead Scienter With the Requisite Particularity.**

Ignoring that this is a case about an earnings forecast that came up short, and citing only the standard for fraud relating to statements of "present or historical fact" (that "actual knowledge or recklessness suffices" (Opp. at 11)), Plaintiffs argue they have adequately pleaded scienter. Yet Plaintiffs fail utterly to explain just how the generalized allegations of the Amended Complaint "with respect to *each act or omission* . . . state with particularity facts giving rise to a strong inference that *the defendant* acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added). Tacitly admitting that the group pleading doctrine has no place in the Seventh Circuit, Plaintiffs instead argue that this Court may assume scienter under something they posit as the "core operations doctrine," thus relieving themselves of a pleading burden they cannot satisfy. This argument simply misstates the law of this Circuit.[9]

Plaintiffs neither address nor distinguish the many cases cited in support of Defendants' argument that scienter cannot be properly pleaded merely by referring to an individual's position

---

[8] Further, Plaintiffs' appear to argue that SDI's projections were reckless. (Opp. at 33-34.) It is well established that allegations of recklessness are insufficient to defeat the safe harbor's third prong. *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 705 (7th Cir. 2008); *Johnson v. Tellabs, Inc.*, 262 F. Supp. 2d 937, 958 (N.D. Ill. 2003).
[9] Busse and SDI join in the arguments made on this point by Defendant Bates. (*See* Bates Reply [dkt#49] at 9-11.) They also join in the arguments Defendant Bates makes as to standing. (*See* Bates Reply at 5-7.)

12

or to unidentified and unspecified meetings, documents, or information. (SDI Memo. at 21-23). Instead, arguing that the alleged fraud involved the company's "core operations," Plaintiffs invite the Court to presume scienter as to all Defendants and as to all statements quoted in paragraphs 25-31 of the Amended Complaint, without specifying *for each allegedly fraudulent statement* the basis for the allegation that any *particular Defendant* had a culpable state of mind.[10]

These obvious pleading deficiencies are the result of Plaintiffs' persistent failure to identify any misstatement and to identify just which of the more than thirty separate statements quoted in paragraphs 25-31 of the Amended Complaint were really false and are really at issue here. Although Plaintiffs point generally to "the challenging economic environment facing the steel industry" and "continuing weak demand" (Opp. at 14), neither of these "facts" even suggests (let alone pleads, as is required of Plaintiffs) that any particular Defendant made any specific statement knowing it was false or with reckless disregard for the truth.[11]

Plaintiffs' cited authority is inapposite. (Opp. at 16.) For example, in *In re Ulta Salon, Cosmetics & Fragrance, Inc. Sec. Litig.*, 604 F. Supp. 2d 1188 (N.D. Ill. 2009), the plaintiffs' complaint contained "ample" and "detailed" allegations demonstrating knowledge on the part of the defendants. *Id*. at 1196-97. Plaintiffs' allegations here do not come close to this level of specificity.[12] Only by deliberately misquoting certain statements can Plaintiffs attempt a similar

---

[10] As but one example, Plaintiffs do not explain just how any particular Defendant knew or should have known that the following statement was fraudulent: "we cannot be certain how long it will take the steel and scrap markets to return to more normal demand patterns." (AC ¶ 26.)

[11] Plaintiffs claim Defendants stated that SDI "*will return* to profitability . . ." (*id.* (emphasis added)), but they intentionally omit the qualifiers in the actual statement that "[w]e are *optimistic* that . . . we will return to profitability *assuming no recurrence of dramatic price swings such as those experienced in the second half of 2008*." (AC ¶ 26, quoting January Release.) Scienter cannot be premised on misquoting the allegedly fraudulent statement. *See, e.g.*, *In re Allied Prods. Corp.*, No. 99 C 3597, 2000 WL 1721042, at *4 (N.D. Ill. Nov. 15, 2000) (dismissing with prejudice fraud allegations as to statements where "[a] plain reading of the press release clearly refutes plaintiffs' interpretation of defendants' statements").

[12] Plaintiffs' other citations fare no better. *See In re Motorola Sec. Litig.*, No. 03 C 287, 2004 WL 2032769, at *32 (N.D. Ill. Sept. 9, 2004) (finding no evidence that individual defendants had information that was contrary to the statements made about a loan); *Allied*, 2000 WL 1721042, at *4 (finding scienter was adequately pleaded only where "defendants were daily and monthly appraised [*sic*] of problems with production and cost accounting").

showing, but even then they have not alleged specific facts showing that any Defendant had information that contradicted any actual statements made in the January Release or Call.[13]

### 5.  Plaintiffs Fail To Plead Loss Causation.

Plaintiffs fail to allege facts showing that the March Update, the so-called "corrective disclosure," corrected anything. In fact, on its face, the March Update is entirely consistent with the January Release and Call—it is simply more current. Thus, Plaintiffs do not (and cannot) plead the requisite causal connection between any material misrepresentation and any loss. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (citation omitted). Further, although Plaintiffs claim that "information available throughout the steel industry supported the fact that the weak demand trend for steel products had not improved," (Opp. at 10), they fail to explain how, in a case alleging fraud on the market (AC ¶¶ 23-24), they can square such a concession with a purported loss caused by SDI's similarly negative disclosures.

### 6.  Plaintiffs Cannot Plead a Control-Person Claim.

Plaintiffs concede that they must plead a primary violation of Section 10(b) in order to support a control-person claim under Section 20(a). (Opp. at 37-38.) Plaintiffs fail to plead a primary violation under Rule 10(b). Because Section 20(a) claims are derivative of Section 10(b) claims, Plaintiffs' Section 20(a) claims must fail. 15 U.S.C. § 78t(a); *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008).

---

[13] Plaintiffs claim they do not need to plead a strong inference of scienter as to any particular individual in order to plead scienter sufficiently as to SDI. (Opp. at 20-21.) This is a red herring. In *Makor Issues & Rights, Ltd. v. Tellabs Inc. (Tellabs II)*, 513 F.3d 702 (7th Cir. 2008), cited by Plaintiffs, while the Seventh Circuit suggests that a plaintiff could theoretically plead a strong inference of corporate scienter without naming "the individuals who concocted and disseminated the fraud," this only applies in "dramatic" circumstances. *See id.* at 710 (giving concrete examples of such "dramatic" circumstances, none of which are close to what Plaintiffs have alleged here).
   Plaintiffs' "it's possible" argument is insufficient because Plaintiffs plead *absolutely nothing* regarding the "collective knowledge" or "collective scienter" of the company. (*See* Opp. at 20.) Indeed, the whole thrust of the Amended Complaint is that the statements in question were made for the alleged purpose of pumping up Bates's stock for his personal gain, not any general corporate purpose. (*See* AC ¶ 2, stating "[d]ue to Bates' desire to dump his shares into the public market, SDI *was caused to make* . . . false and misleading statements . . . .") (emphasis added). Thus, Plaintiffs cannot impute a strong inference of scienter to SDI.

14

**CONCLUSION**

Plaintiffs' Opposition confirms that they have filed a securities fraud case without indentifying a single misstatement, without satisfying Rule 9(b), without recognizing that SDI's and Busse's statements are within the PSLRA's safe harbor, without pleading scienter with particularity, without pleading loss causation, and without pleading a control person claim. Having now twice attempted to plead their case, Plaintiffs do not identify any missing facts or other information that would justify another amended complaint. Accordingly, the Court should dismiss with prejudice the manifestly deficient Amended Complaint, without leave to amend further.

Respectfully submitted,

| | |
|---|---|
| BARRETT & MCNAGNY LLP | MCDERMOTT WILL & EMERY LLP |
| By: /s/ Robert S. Walters | By: /s/ Joel G. Chefitz (per consent) |
| Robert S. Walters | Joel G. Chefitz *(Pro Hac Vice)* |
| Cathleen M. Shrader | Mary E. Gardner *(Pro Hac Vice)* |
| Jeremy N. Gayed | Jeffrey Baltruzak *(Pro Hac Vice)* |
| BARRETT & MCNAGNY LLP | MCDERMOTT WILL & EMERY LLP |
| 215 East Berry Street | 227 West Monroe Street |
| Fort Wayne, Indiana 03302 | Chicago, Illinois 60606 |
| Tel: (260) 423-9551 | Tel: (312) 372-2000 |
| Fax: (260)423-8920 | Fax: (312) 984-7700 |
| rsw@barrettlaw.com | jchefitz@mwe.com |
| cms@barrettlaw.com | mgardner@mwe.com |
| jng@barrettlaw.com | jbaltruzak@mwe.com |
| Dated: November 9, 2009 | *Attorneys for Defendants Steel Dynamics, Inc. and Keith Busse* |

## CERTIFICATE OF SERVICE

   I hereby certify that I have this 9th day of November, 2009, served a true and correct copy of the foregoing via the Court's CM/ECF filing system or by depositing a copy of the foregoing in the Courthouse Mail or the U.S. Mail, postage prepaid, properly addressed to the following counsel of record:

Deborah R Gross
LAW OFFICES OF BERNARD M GROSS PC
Suite 450 Wanamaker Bldg
100 Penn Square East
Philadelphia, PA 19107
E-mail: debbie@bernardmgross.com

John C Theisen
Marie M. Kolp
THEISEN BOWERS & ASSOCS LLC
810 S Calhoun Street Suite 200
Fort Wayne, IN 46802
E-mail: jtheisen@tbalawyers.com
E-mail: mkolp@tbalawyers.com

Scott D Gilchrist
COHEN & MALAD LLP
One Indiana Square Suite 1400
Indianapolis, IN 46204
E-mail: sgilchrist@cohenandmalad.com

Christian J Mixter
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave NW
Washington, DC 20004
E-mail: cmixter@morganlewis.com

Jill M Baisinger
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
E-mail: jbaisinger@morganlewis.com

Steven L Jackson
BAKER & DANIELS
111 E Wayne St Suite 800
Fort Wayne, IN 46802-2387
E-mail: steven.jackson@bakerd.com

                /s/ Robert S. Walters